584 So.2d 1077 (1991)
Joseph SILVER, Appellant,
v.
Linda F. BORRELLI, a/K/a Linda F. Silver, Appellee.
No. 90-1911.
District Court of Appeal of Florida, Fourth District.
August 7, 1991.
Rehearing Denied September 24, 1991.
*1078 Joseph A. Murphy, III, Fort Lauderdale, for appellant.
William H. Stolberg, Fort Lauderdale, for appellee.
GARRETT, Judge.
The husband appeals the trial court's order that granted the wife's motion for modification of their final judgment of dissolution. We affirm.
When the parties got divorced in March of 1988 the husband had a gross annual income of about $5,000. The final judgment did not require him to pay any child support. In October of 1988, one of their two children threatened suicide. A month later, the wife moved for modification of the final judgment because of the extraordinary medical and psychological expenses incurred from the child's hospitalization. The trial judge referred the motion to a general master.
At the January, 1990 hearing before the general master, the husband filed a financial affidavit that showed his gross annual income had increased to $24,000 with a net monthly income of $1,300. The affidavit showed total monthly expenses of $3,499 which included household expenses of $1,075; however, the general master's report read in part:
The Husband testified that he lives with someone else in whose house he resides ... and he does not pay rent each and every month, but rather he sometimes pays half of the mortgage payment and sometimes pays the household expenses.
The affidavit also included the following:

 EXPENSES RE: CHILDREN
 Visitation [sic] [$]430.00
 Dr. Miranda 420.00
 Dr. Iverson 350.00

The obligations to the doctors related to court ordered family counseling. The husband testified that he also had to pay consultants to supervise visitation if he wanted to see his children. It is unclear why visitation must be supervised at this time because in January of 1989 the trial court restored the husband's visitation rights without any condition of supervision.
The wife's financial affidavit showed a "Net Cash Flow Short-Fall Per Month" of $1,336 based on a net monthly income at $4,901 and total monthly expenses of $6,237. The affidavit showed monthly expenses of $1,971 for her household and $1,390 for her children. An unaudited "Statement Of Income" from the wife's professional association for the first eleven months of 1988 showed a net income of $51,225.41 and $18,000 for amortization and depreciation. In March of 1990, the general master found that "[t]he wife's actual money available from her business [was] probably higher than [was] reflected on her financial affidavit due to bookkeeping methods of depreciation as well as available assets in her business," but did not determine the actual amount.
The general master also found a change in circumstances ("the [h]usband's income ha[d] gone up"), granted the modification and recommended that the husband pay "one half of the expenses of counseling, Dr. Miranda and Dr. Iverson" and "$125 per child per month" as child support. The trial judge heard the husband's exceptions to the report of the general master and found that "the husband should pay a stated amount of cash ... as child support and not be ordered to pay the unspecified expenses to Dr. Miranda and Dr. Iverson." The husband appealed after the trial court ordered him to pay $525 per month as child support.
As we read the dissent, Judge Anstead finds the "increase" in the husband's child support obligation to be excessive, not that the husband should not pay child support. Under the rationale of Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), we should not second guess the trial court's discretionary ruling that the husband pay $525 a month as child support. We conclude that reasonable persons would differ as to whether that amount was excessive.
*1079 If we attribute another $2,000 net monthly income to the wife the combined net monthly income of the parties would be $8,201. Under the amended child support guidelines which took effect on July 1, 1991, the figure for two children would be $1,763. Section 61.30(6), Fla. Stat. (Supp. 1991). The wife's net monthly income would compute to be 84% of their combined net monthly income and she would be responsible for $1,481 of the guideline figure. See § 61.30(8) and (9), Fla. Stat. (1989). The husband would be responsible for the remaining $282 which is $243 a month less than what the $525 a month the trial judge ordered him to pay as child support. Certainly reasonable persons would differ as to whether the extraordinary medical and psychological expenses for the hospitalized child justified an upward adjustment of $243 a month for the husband. Section 61.30(10)(a), Fla. Stat. (1989).
In addition, the appealed order appears to reduce not increase the amount of the husband's obligations to his children. He formerly had to pay $1,200 a month to either see or provide treatment for his children. He must now pay $525 a month to support his children, a reduction of more than one half. Also, although the record does not reveal the dates of the supervision or counseling, apparently the husband had the means to pay a substantial portion of those monthly obligations. He testified that the consultants had been paid and that he only owed $275 to Dr. Miranda and about $1,200 to Dr. Iverson. To use the husband's figures and assuming that he paid nothing to Dr. Iverson, it would take at least three months for him to owe Dr. Iverson $1,200. During that three month period he would have paid the consultants and Dr. Miranda about $750 a month or 50% more than the amount of the ordered child support.
Hopefully in the near future, the need for the modification will terminate and that change of circumstance will allow the husband to seek a downward modification. Absent the need for extraordinary expenses and if the financial positions of the parties remain the same, the husband could reasonably argue that his child support payments should be cut in more than half to reflect the $125 per child per month finding of the general master or the guidelines figure of $282 per month.
As to the claim of reverse sexual discrimination, we are not convinced that all former wives situated as appellant would be treated differently by the trial judges of this state. Under like circumstances, a former wife may very well be ordered to pay child support or extraordinary expenses for her children in the custodial care of her well-to-do former husband. Also, we note that when applicable section 61.30(8) must be used to determine the percentage share of child support by dividing each parent's net income by their combined net incomes and section 61.30(9) must be used to determine each parent's actual dollar share.
AFFIRMED.
POLEN, J., concurs.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting.
I would reverse and find as excessive the trial court's increase in child support because it varies from the amount found appropriate by the general master, and because of the enormous disparity in the incomes of the parties in favor of the wife, a practicing chiropractic physician.
The factfinder in this case was the general master. Evidence was presented to the general master that the physician-wife's annual income, at the time of dissolution and at the time of modification, was in excess of $250,000. Her net income was approximately $150,000 per year. She spent some $15,000 annually on educational seminars alone. The husband's gross annual income was $25,000. The wife claimed that her income, although still substantial, had decreased. However, the general master specifically rejected the wife's claim in his report to the circuit court:
"There was insufficient evidence to show that the wife's income has gone down since the time of the dissolution... ."
The general master recommended support of $125.00 per month per child as an appropriate *1080 portion of child support for the husband to pay, considering the needs of the children and the respective abilities of the wife and husband to meet those needs.
Determination of an appropriate amount of support is essentially a factual issue, heavily dependent upon the factfinder's determinations as to need and ability to pay. We, of course, are bound to defer to the factfinder's determinations. Had the factfinder here been the trial court instead of the general master, the husband would be hard pressed to demonstrate error. However, the factfinder here, the general master, has found the facts to be supportive of the husband's position. The master's findings of fact, in the absence of gross error, are conclusive and binding on the trial court and this court. No one even suggests any error by the master here. Accordingly, I would reverse and remand with directions that the support payments be reduced to the amount set out in the general master's report.
The appellant-husband contends, and I believe correctly, that the support order in this case gives the appearance of reverse sexual discrimination. He notes that under prior case law it would be highly unlikely, if the disparity in incomes existed in favor of the husband, that this court would sustain an order directing the wife to pay such a disproportionate share of her income in child support.