678 So.2d 435 (1996)
Dennis P. CROWLEY, Appellant/Cross-Appellee,
v.
Catherine C. CROWLEY, Appellee/Cross-Appellant.
No. 94-2338.
District Court of Appeal of Florida, Fourth District.
August 7, 1996.
*436 Jacqueline M. Valdespino of the Law Offices of Jacqueline M. Valdespino, Coral Gables, for appellant/cross-appellee.
Cathy Chimera of Bright & Chimera, P.A., Delray Beach, for appellee/cross-appellant.
SPEISER, MARK A., Associate Judge.
The husband, Dennis Crowley, appeals from a final judgment of dissolution of marriage from his wife, Catherine Crowley, claiming that the trial court erred in several respects: (1) in its distribution of the assets of the marriage, (2) by imputing income to the husband for purposes of determining his child support obligation, (3) in denying husband's motion for rehearing and for relief from judgment, (4) in ordering husband to pay two-thirds of wife's attorney's fees, (5) in allowing wife to relocate with children to Louisiana and (6) in awarding wife $50,000 in lump sum rehabilitative alimony. We affirm in part, reverse in part and remand for further proceedings.
The parties, who met and were married in Louisiana in May 1988, had two minor children. The instant divorce proceeding was instituted in January of 1994. For the better part of the five and one-half year marriage, the wife was a homemaker and raised the two children. When the parties moved to Florida, the husband was employed as a stockbroker until he eventually invested and became a principal in Dry Cleaning Depot, Inc., a large dry cleaning chain.
The status of the husband's position in Dry Cleaning Depot as of the date of the proceedings below is significant in the resolution of several issues on appeal. The husband's substantial *437 investment in the laundry chain was financed in part by a portion of a $900,000 cash loan from James Bowman, a personal friend. $600,000 of this amount was utilized to acquire stock in Dry Cleaning Depot, and the balance of $300,000 was used by the husband and wife for living expenses.
The husband was president of the business and, with 3.5 million shares, the majority stockholder as well. However, the husband was restricted in his resale of the stock to one percent per quarter. Because the husband's long term goal was to establish Dry Cleaning Depot as a successful business, he willingly accepted a relatively low salary of $30,000 per year. Throughout the trial, the husband repeatedly stressed his desire to retain his stock so that he could implement his long term plans for the laundry chain.
In addition to the shares of restricted stock in Dry Cleaning Depot, the parties' primary marital assets included four luxury cars, art work, jewelry, sports memorabilia, household contents, and $260,000 in cash. The principal liability was the $900,000 debt to Mr. Bowman. The only income of the parties appeared to be the husband's $30,000 per year salary although the husband's own expert witness testified the parties had an after tax cash flow of $136,831 in 1993.
Both parties sought custody of the children and child support. At trial the wife requested permission to relocate with the children to Louisiana. The husband unsuccessfully objected to relocation claiming that the lower court was without jurisdiction to consider the same because the wife failed to seek this affirmative relief in her dissolution petition. Additionally, although the wife indicated she would like to pursue a career as an interior designer, her own expert rehabilitative witness testified the wife should return to school in Louisiana to secure a business administration degree.
Following a two day trial in June of 1994, the husband moved for a rehearing pursuant to Florida Rule of Civil Procedure 1.540(b) contending that the wife perpetrated a fraud on both the court and the husband. The trial court had awarded the husband the majority of the restricted stock in Dry Cleaning Depot and distributed the majority of the remaining marital assets, both tangible items and cash, to the wife. According to the husband, the alleged fraud was that at the time of trial, the wife knew and was conspiring with two other major shareholders of Dry Cleaning Depot (Bowman and Ware) to force the husband into transferring to them (Bowman and Ware) two million shares of his stock in the company. This in fact occurred within two days after the lower court's final order and the husband was ousted from the business. The husband claimed the wife knew prior to the entry of final judgment that the husband's financial circumstances would significantly change as a result of Bowman and Ware's plan and that had this been disclosed, the trial court's findings would have been vastly different. The trial court denied this motion without an evidentiary hearing. We now turn to the issues presented on appeal.

I. MOTION FOR RELIEF FROM JUDGMENT

Of paramount concern to this court is the husband's motion for relief of judgment filed pursuant to Florida Rule of Civil Procedure 1.540(b), approximately one week following the entry of the order of dissolution. The trial judge summarily denied the motion without an evidentiary hearing.
Rule 1.540(b)(3), Florida Rules of Civil Procedure, permits a court to relieve a party from a final judgment upon a showing of fraud, misrepresentation or misconduct by an adverse party. The relevant part of the husband's allegation is that:
This Court [trial court] must also grant the Husband relief from the trial judgment entered pursuant to Fla. R. Civ. P. 1.540(b) as a result of the fraud which was committed by the wife and her counsel on the Court. As admitted by the Wife, at the time of the trial, the Wife knew that two shareholders of DCDP [Dry Cleaning Depot, Inc.] intended to oust the Husband from his employment. In fact, the date following this Court's trial ruling, two shareholders of the Husband's company, Joseph Bowman ("Bowman") and Oliver Ware ("Ware"), conspired with the Wife to extort two million shares of the company's stock. Subsequent to the transfer, the *438 Husband was terminated from his employment. Following these events, the Husband filed a civil lawsuit seeking, among other things, an injunction allowing him to continue operating the company. The Wife's counsel, Brian Hersh, represents the Defendants in that lawsuit. During the trial the Wife was aware of Mr. Bowman and Mr. Ware's plan to oust the Husband from the company. The Wife was also aware that the Husband's financial condition would dramatically change as a result of these actions. Nonetheless, the Wife failed to disclose these facts to the Court, or the Husband, in order to obtain a more favorable ruling than what she would have obtained had the court known of these facts.
Although a trial court is accorded broad discretion in determining rule 1.540(b) motions, Gibbons v. L.W. Blake Memorial Hosp., 538 So.2d 1386 (Fla. 2d DCA), rev. denied, 548 So.2d 663 (Fla.1989), cert. denied, 493 U.S. 1085, 110 S.Ct. 1147, 107 L.Ed.2d 1051 (1990), an evidentiary hearing is necessary if the essential facts of the fraud are pleaded with specificity. Wiley v. Wiley, 546 So.2d 1149 (Fla. 4th DCA 1989); Stella v. Stella, 418 So.2d 1029 (Fla. 4th DCA 1982).
Considering the nature of the marital assets distributed to the husband, which consisted almost exclusively of the stock in Dry Cleaning Depot, coupled with the fact that one alternative, albeit speculative, explanation for the trial court's imputation of income to the husband for child support purposes was his understated salary from the company, we are persuaded that the recitations of the motion for relief entitle the husband to an evidentiary hearing. The husband's motion is not a mere undertaking to "rehash" matters previously litigated at trial or an effort to raise inconsequential "de minimis" matters. Compare Flemenbaum v. Flemenbaum, 636 So.2d 579 (Fla. 4th DCA 1994).
The core of the husband's motion, if true, would undermine the very foundation upon which this dissolution judgment and order were built, namely, the expected future viable relationship between the husband and Dry Cleaning Depot.[1] It may also affect the credibility determination of the judge in relation to the other issues raised. We therefore remand with directions that the trial court proceed with an evidentiary hearing on the issue raised by the husband's motion for relief of judgment.
We address the remaining issues on the final judgment, should the trial court determine that no relief is available under Rule 1.540. However, we do not imply by addressing the other issues any opinion as to the substantive merit of the Rule 1.540(b) motion.

II. DISTRIBUTION OF MARITAL ASSETS AND LIABILITIES

Although a trial court has broad discretion in attempting to achieve an equitable allocation of marital assets and liabilities, Hamlet v. Hamlet, 583 So.2d 654 (Fla.1991), the guiding light illuminating a trial judge's course of direction emanates from section 61.075(1), Florida Statutes (1993), which sets forth the relevant factors to be considered. The record below supports the trial court's assignment of value and distribution of assets and liabilities in accordance with section 61.075(1). The apportionment was truly equal.
The husband's disagreement is not with the valuation or distribution but rather the nature of the assets assigned to each spouse. See Tunderman v. Lee, 585 So.2d 354 (Fla. 2d DCA 1991). However, unlike Tunderman, the husband below persistently pressed the trial court to award him the majority of the stock in Dry Cleaning Depot so that he could retain control as the majority stockholder. Because the husband received that which he requested, this court is unable to conclude that the trial court abused its discretion in the equitable distribution. Moreover, there is no basis in the record to support and we reject the husband's suggestion *439 that the assignment of particular assets to the respective spouses was a punitive exercise by the trial judge against the husband.

III. CHILD SUPPORT

The husband urges us to overturn the trial court's award of child support for the two minor children in the amount of $2,309.19 per month. We agree and remand for reconsideration.
The trial court determined that the wife had a new income generating ability of $900 per month[2], a finding with which we take no issue. The focus of our concern, however, is with the lower court's conclusion that the husband's net income earning ability from salary, bonus and "other undisclosed sources of income from his business and business accounts" (emphasis added) was $12,500 per month.
The uncontroverted testimony is that in 1993, the year preceding the divorce, the husband earned $30,000 from Dry Cleaning Depot. Section 61.30(2)(b), Florida Statutes (1993), provides for the imputation of income where a parent is voluntarily underemployed or underpaid based upon a showing that the party has the capability to earn more. Cushman v. Cushman, 585 So.2d 485 (Fla. 2d DCA 1991). The record below indicates from the testimony of the husband as well as his own expert witness that the husband's salary in 1992 was relatively low and that he anticipated making up the difference from a future sale of the business after an increase in the value of the corporation. Thus, the husband's current income from salary and bonus would appear to understate his income producing ability.
Unfortunately, the trial court's order fails to specify in detail whether the additional $10,000 per month imputed to the husband represents the difference between his actual monthly pay from Dry Cleaning Depot and what he should be paid. Viscito v. Menditto, 644 So.2d 135 (Fla. 4th DCA 1994); Jones v. Jones, 636 So.2d 867 (Fla. 4th DCA 1994); Neal v. Meek, 591 So.2d 1044 (Fla. 1st DCA 1991). Without this requisite specific factual determination this court is unable to ascertain whether the income imputed was properly calculated.
The trial court may have erroneously relied upon the testimony of the husband's expert witness that the parties had a lifestyle in 1993 consistent with a gross income of $193,203, inclusive of the husband's salary and bonus ($30,000) or a net after tax figure of $136,831. However, a more reasonable inference from our review of the record suggests that the source of this "excessive lifestyle" in 1993 was the remaining $300,000 of the $900,000 cash loan made by Bowman to the husband. It is clear that the parties lived off a portion of those funds in 1993 and they intended to do so until the husband prospered from his dry cleaning business.
If in fact the court relied on this $300,000 as imputed income for child support calculations and not the husband's purported understatement of income from the business, the illogic of this position is transparent. The trial court's order itself lists the entire $900,000 due Bowman as a marital liability. It is thus patently inconsistent for the final judgment to characterize the $300,000 figure as both a liability and a source of income. Assuming arguendo the $300,000 was not a loan, nothing in the record below suggests this is income of a recurring nature which section 60.30(b)(13) implicitly requires. See also Stodtko v. Stodtko, 636 So.2d 814 (Fla. 3d DCA 1994).
Accordingly, the trial court abused its discretion in ordering the husband to pay support in the amount of $2,309.19 per month. While child support determinations are within the sound discretion of the trial court, this court is unable to evaluate and support the findings of the trial court based upon the record below or the order of final judgment. Dyer v. Dyer, 658 So.2d 148 (Fla. 4th DCA 1995).

IV. ATTORNEY'S FEES AND COSTS

The husband additionally challenges the trial court's order directing that he pay two-thirds of his wife's attorney's fees and costs. The predicate for this ruling is the trial judge's finding that the husband's resources and future earning capacity vastly exceed *440 those of his wife and furthermore, that he unnecessarily prolonged the litigation.
Attorney's fees may be awarded as a punitive measure where a spouse in a domestic relations case institutes frivolous non-meritorious claims that contribute to unnecessary legal expenses, costs and a delay of the proceedings. Mettler v. Mettler, 569 So.2d 496 (Fla. 4th DCA 1990). However, nothing in the record below suggests the husband abused the judicial process. The instant litigation did not continue for years, involve excessive motions or baseless claims. Compare Sutter v. Sutter, 578 So.2d 788 (Fla. 4th DCA 1991); Steinfeld v. Steinfeld, 565 So.2d 366 (Fla. 4th DCA 1990), receded from on different grounds, Cibula v. Cibula, 578 So.2d 519 (Fla. 4th DCA 1991).
On the contrary, a period of less than six months ensued between the filing of the complaint below and the trial on the merits. We are reluctant to equate conduct of the husband below that may be characterized as aggressive, persistent or acrimonious with the type of behavior that can be properly labeled as an abuse of the system. Thus, any portion of the attorney's fee award based upon the husband's purported frivolous litigation must be set aside absent findings identifying those portions of the proceedings deemed litigious.
Consistent with this opinion, we are somewhat constrained to approve the alternative basis for the award of attorney's fees, namely, the husband's superior resources and earnings capacity. If after conducting an evidentiary hearing as directed by this court on the rule 1.540(b) relief from judgment claim, the trial court concludes the husband's position is meritorious, it will be necessary to revisit and redetermine if in fact the husband has more significant resources. Conversely, if there is no basis to support the husband's claim of misconduct by the wife's omission, a revised award of attorney's fees must nevertheless be calculated based solely upon his future earnings capacity. As such, the trial court's attorney's fee award is reversed.

V. RELOCATION

The husband next claims that the trial court was without jurisdiction to litigate the wife's request to relocate to Louisiana with the children since this affirmative relief was not specifically requested in her complaint. However, the husband's claim of unfair prejudice is unsupported by the record below. In her petition for dissolution, the wife requested all relief the trial court is empowered to grant. Moreover, the issue of relocation was addressed in the joint pretrial statement and, again, during the opening statements of both parties. Finally, at no time during the trial did the husband object to the admission of evidence concerning relocation. Therefore, since the husband has failed to prove prejudice, the trial court did not abuse its discretion in allowing the wife to relocate to Louisiana. Bachman v. Bachman, 539 So.2d 1182 (Fla. 4th DCA 1989).
However, this court is concerned with the incompatibility between the determination allowing relocation and the stipulated visitation schedule. The visitation agreement discusses alternative weekend custody and weekday, school and holiday visits of the children with the husband. The geographical distances between the parties renders compliance with the stipulated schedule virtually impossible. Accordingly, we sua sponte direct the trial court upon remand to establish a more practical arrangement between the parties.

VI. REHABILITATIVE ALIMONY

The final issue for review is the $50,000 lump sum award of rehabilitative alimony to the wife. Rehabilitative alimony is intended to provide the funds by which the receiving spouse can develop skills or receive training necessary to become selfsufficient, Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), and maintain the standard of living commensurate with that established during the marriage. Kuharcik v. Kuharcik, 629 So.2d 224 (Fla. 4th DCA 1993). We are satisfied from the record that the wife competently demonstrated her entitlement to rehabilitative alimony and her ability through further education and training to prepare herself for the transition from marriage to single life.
Our concern is not with an award for rehabilitative alimony to "bridge the gap" for the wife. Rather, it is with the lack of discernible evidence pointing to how the trial court *441 arrived at this $50,000 figure, presumably, to fund the cost of this educational program. Consequently, we remand to the trial court to make the necessary findings to justify an award of this amount or to determine an alternative appropriate figure. Corchado v. Corchado, 648 So.2d 1261 (Fla. 4th DCA 1995); Bridges v. Bridges, 506 So.2d 1047 (Fla. 4th DCA), rev. denied, 519 So.2d 986 (Fla.1987).
In sum, we reverse the denial of husband's motion for relief from judgment, the child support determination, the attorney's fee award, the visitation schedule and the rehabilitative alimony award. Initially, upon remand, the trial court must first hold an evidentiary hearing on the husband's motion for relief from judgment as resolution of the same may very well impact the entire final judgment. In the event the husband's post-trial motion is denied, the trial court must nevertheless revisit child support, attorney's fees, rehabilitative alimony and the visitation schedule. Accordingly, this case is affirmed in part, reversed in part and remanded for further proceedings consistent herewith.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WARNER, J., concurs.
SHAHOOD, J., concurs in part and dissents in part.
SHAHOOD, Judge, concurring in part; dissenting in part.
I concur with the majority on all issues except two. I would affirm the trial court's ruling on child support and award of rehabilitative alimony. A child support determination lies within the sound discretion of the trial court, subject to the statutory guidelines and the reasonableness test. Armstrong v. Armstrong, 623 So.2d 1216 (Fla. 4th DCA 1993). A reviewing court should not second guess a trial court's discretionary ruling regarding the amount of child support. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Silver v. Borrelli, 584 So.2d 1077 (Fla. 4th DCA 1991). Accordingly, an award of child support cannot be overturned on appeal absent a clear showing of an abuse of discretion. Silver. Thus, this court must determine whether the trial court abused its discretion in ordering Appellant to pay $2309.19 in child support per month.
Section 61.30, Florida Statutes (1993), presumptively establishes the amount the trier of fact may order as child support in a dissolution proceeding. § 61.30(1)(a), Fla. Stat. (1993). Nevertheless, while helpful, the child support guideline figures are not to be automatically applied. Todesco v. Todesco, 583 So.2d 774, 775 (Fla. 4th DCA 1991). Accordingly, where appropriate, section 61.30 contemplates the imputation of income to an underemployed parent. Specifically, section 61.30(2)(b) provides:
Income shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community;....
The appropriate procedure for imputing income is to impute a gross income to a voluntarily unemployed or underemployed parent and then derive an imputed net income by subtracting the allowable deductions. See Moss v. Moss, 636 So.2d 164 (Fla. 4th DCA 1994). However, when imputing income, the trial court is required to explicitly set forth the amount and the source of the imputed income. See Viscito v. Menditto, 644 So.2d 135 (Fla. 4th DCA 1994); Jones v. Jones, 636 So.2d 867 (Fla. 4th DCA 1994); Wendroff v. Wendroff, 614 So.2d 590 (Fla. 1st DCA 1993).
In the instant case, the trial court determined that the husband's net after-tax income was $12,500 per month based upon his "salary, bonuses, and other undisclosed sources of income from his business and business associates." On appeal, he contends that the trial court, without the appropriate findings, imputed to him over $10,000 per month because the uncontroverted evidence was that he earned $30,000 per year including *442 his bonus. However, for purposes of child support, income is not limited to solely salary, wages and bonuses. Pursuant to the guidelines, gross income includes, but is not limited to the following: salary or wages, bonuses, and business income from sources such as self-employment, partnerships, close corporations, and independent contracts. § 61.30(2)(a), Fla. Stat. (1993).
At trial, the husband's own expert testified that after taxes, the parties had a stream of cashflow totaling $136,831 in 1993. Based upon the $136,831 figure, the husband's expert calculated the amount of child support at $2,328, nineteen dollars more than that which was ultimately ordered. Thus, instead of imputing income to the husband, the trial court properly included monies derived from his business associations and associates in calculating his income for child support.[3] I find no abuse of discretion by the trial court on this issue.
The purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). Accordingly, an award of rehabilitative alimony must be predicated upon a showing of a need for the alimony and the ability to pay as well as evidence that the party seeking the rehabilitative alimony has the ability through retraining or education to provide for a standard established during the marriage. Bissell v. Bissell, 622 So.2d 532 (Fla. 1st DCA 1993). Similar to other issues in domestic relations cases, the nature and amount of an award of alimony is a matter committed to the sound discretion of the trial court. Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988). We must determine whether the trial court abused its discretion in making an award, in light of the overall financial scheme. Rey v. Rey, 598 So.2d 141 (Fla. 5th DCA 1992). Thus, this court must determine whether, in the case sub judice, the trial court abused its discretion in awarding the wife a lump sum award of $50,000 for rehabilitative alimony. I cannot say the trial court abused its discretion in that regard.
NOTES
[1] Any suggestion that rule 1.540(b) contemplates only an affirmative misrepresentation by an adverse party is misplaced. The husband's motion alleges an omission of material fact as opposed to a false representation. Such a failure to notify is equally proscribed by rule 1.540(b) for it constitutes misconduct of an adverse party. In re Adoption of a Minor Child, 593 So.2d 185 (Fla. 1991).
[2] Interest income of $200 per month and imputed employment income of $700 per month.
[3] The trial court did impute $900 per month to the wife and did factor this amount into determining the child support amount.