TAYLOR, J.
 

 Coleman (Parent) Holdings, Inc. (CPH) appeals the trial court’s order denying its motion to set aside judgment under Florida Rule of Civil Procedure 1.540(b). The judgment that CPH sought to set aside was entered in favor of Morgan Stanley, pursuant to our mandate in
 
 Morgan Stanley & Co., Inc. v. Coleman (Parent) Holdings, Inc.,
 
 955 So.2d 1124 (Fla. 4th DCA 2007). In that appeal, we reversed compensatory and punitive damage awards for CPH because CPH had failed to present legally sufficient proof of damages at trial. In its Rule 1.540(b) motion, CPH sought a new trial based upon its claim that Morgan Stanley committed a fraud upon the court in discovery sanction hearings held before trial. We affirm the order denying the motion.
 

 This case arose from an alleged conspiracy between defendant Morgan Stanley and the now-defunct Sunbeam Corp. CPH purchased Sunbeam, allegedly in reliance on misrepresentations of Sunbeam’s investment banker, Morgan Stanley. Sunbeam went bankrupt within about two years and CPH sued Morgan Stanley for fraudulent conspiracy to misrepresent Sunbeam’s financial health at the time of sale.
 
 See Morgan Stanley,
 
 955 So.2d at 1125-26.
 

 
 *954
 
 Before trial, the tidal court entered a partial default against Morgan Stanley as a sanction for discovery misconduct in responding to requests for e-mails about the transaction.
 
 [1]
 
 Morgan Stanley kept old emails on certain backup tapes stored at various locations. The trial court held extensive hearings regarding Morgan Stanley’s non-compliance with discovery orders for e-mail production, as well as misrepresentations by Morgan Stanley’s in-house counsel concerning when they learned that e-mails existed on certain back-up tapes. Ultimately, the court entered a partial default against Morgan Stanley on all elements of CPH’s claim except reliance and damages. It also ordered that portions of CPH’s Amended Complaints be read into evidence and deemed established facts. Thus, CPH needed to prove only that it relied on the established misrepresentations and to prove its damages. The jury awarded CPH nearly $1.5 billion in compensatory and punitive damages.
 

 We reversed the award solely because CPH failed to prove its damages. CPH failed to establish the actual fraud-free value of Sunbeam on the date of purchase, in accordance with settled Florida law. We further held that CPH’s failure to establish actual damage, which is an essential element of fraud, rendered the punitive damage award invalid. Because the law in our district does not allow a “second bite at the apple” to prove damages, we reversed and ordered judgment for the defendant.
 
 Morgan Stanley,
 
 955 So.2d at 1131. The Florida Supreme Court denied review.
 
 Coleman (Parent) Holdings, Inc. v. Morgan Stanley Co. Inc.,
 
 973 So.2d 1120 (Fla.2007) (Table).
 

 In its motion brought under Rule 1.540(b), CPH requested the trial court to set aside the judgment and grant a new trial on damages. It alleged that Morgan Stanley perpetrated a fraud upon the court, which was revealed during post-verdict notices filed by Morgan Stanley. The notices purported to correct earlier representations made by Morgan Stanley during discovery sanction hearings regarding when its in-house lawyers first knew about the existence of e-mails stored on backup tapes. CPH asserted that this discovery misconduct constituted a fraud on the court, entitling it to have the judgment set aside without having to show any prejudice.
 

 The trial court denied the Rule 1.540(b) motion. In a thorough, detailed, and well-reasoned order, the trial court ruled that an evidentiary hearing was not required because the motion failed to show color-able entitlement to relief under Rule 1.540(b). We agree with the trial court and quote extensively from its order below:
 

 Rule 1.540(b) governs post-judgment relief from a final judgment and lists five categories of substantive grounds that can be used to support an order vacating a final judgment. One such ground is based upon a showing of “fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.” Fla. R. Civ. P. 1.540(b)(3).
 

 A trial court has broad discretion in evaluating a Rule 1.540(b) motion seeking relief from final judgment.
 
 Crowley v. Crowley,
 
 678 So.2d 435, 438 (Fla. 4th DCA 1996). Such motion should not be summarily dismissed without an eviden-tiary hearing unless its allegations and accompanying affidavits fail to allege a colorable entitlement to relief.
 
 Schlegar [Schleger] v. Stebelsky,
 
 957 So.2d 71, 73 (Fla. 4th DCA 2007);
 
 Dynasty Exp.
 
 
 *955
 
 Corp.
 
 v.
 
 Weiss, 675 So.2d 235, 239 (Fla. 4th DCA 1996);
 
 Crowley,
 
 678 So.2d at 437-38.
 

 To warrant an evidentiary hearing, a Rule 1.540(b) motion must ... 2) plead fraud with particularity, and 3) explain why the fraud, if it exists, would entitle the movant to have the judgment set aside. Fla. R. Civ. P. 1.540(b);
 
 Flemenbaum v. Flemenbawm,
 
 636 So.2d 579 (Fla. 4th DCA 1994). The purpose of requiring such motion to plead fraud with specificity is to permit the court to determine if the movant “has made a prima facie showing which would justify relief from judgment,” and is not merely rehashing matters explored at trial.
 
 Id.
 
 at 580. If a motion does not set forth a basis for relief on its face, then an evi-dentiary hearing is unnecessary, the time and expense of needless litigation is avoided, and the policy of preserving the finality of judgments is enhanced.
 
 Id.
 
 at 579.
 

 Since CPH timely filed its Motion and pled fraud with particularity, the only remaining issue is whether CPH clearly explained why MS’s alleged conduct, if true, entitles it to have the final judgment set aside, which is the final threshold requirement to obtaining an eviden-tiary hearing.
 
 Flemenbawm,
 
 636 So.2d at 580. An evidentiary hearing is unnecessary if a Rule 1.540(b) motion merely undertakes to rehash matters previously litigated at trial or raises inconsequential “de minimis” matters.
 
 Id.; cf. Crowley,
 
 678 So.2d at 438.
 

 Flemenbawm
 
 involved an ex-husband’s
 
 “pro se
 
 motion for new trial based upon fraud upon the court under Rule 1.540,” which alleged that his ex-wife lied about cohabitating with another man at trial.
 
 Id.
 
 The trial court did not afford the husband an evidentiary hearing.
 
 Id.
 
 On appeal, the Fourth District affirmed after finding that the husband’s motion did not state facts that constituted fraud and, instead, sought to rehash matters fully explored at trial and “raised
 
 de minimis
 
 matters which had no effect on the final judgment.”
 
 Id.
 
 The court cited examples of sufficiently pled Rule 1.540(b) motions that invoked the evi-dentiary hearing requirement.
 
 See, e.g., Stella v. Stella,
 
 418 So.2d 1029 (Fla. 4th DCA 1982) (if proven, wife’s assertions that husband had testified that a statue was worth $100, while knowing that its true value was $35,000, would have changed the court’s equitable distribution and, thus, entitled wife to an eviden-tiary hearing);
 
 Ross v. Bandi,
 
 566 So.2d 55 (Fla. 4th DCA 1990) (evidentiary hearing required where husband alleged that he learned of an IRS tax lien after the final hearing, which rendered his interest in a corporation worthless).
 

 In
 
 Crowley,
 
 a husband was entitled to an evidentiary hearing on his Rule 1.540(b) motion seeking relief from a dissolution judgment.
 
 Crowley,
 
 678 So.2d at 438. The husband’s motion, filed one week after the entry of the dissolution judgment, claimed entitlement to relief based upon “fraud ... committed by [his] wife and her counsel on the Court;” specifically, the motion claimed that the wife and her counsel had lied by omission about the fact that, unknown to the husband, he would soon be terminated from his job, which would dramatically change his financial condition and, in turn, the final judgment.
 
 Id.
 
 at 437-38. The Fourth District noted that, in contrast to
 
 Flemenbawm,
 
 the husband’s motion was not “a mere undertaking to ‘rehash’ matters previously litigated at trial or an effort to raise inconsequential
 
 ‘de min-imis’
 
 matters.”
 
 Id.
 
 at 438. Instead, “the core of the husband’s motion, if true, would undermine the very founda
 
 *956
 
 tion upon which the dissolution judgment and order were built.”
 
 Id.
 

 In this case, CPH’s motion delves into MS’s discovery misconduct, a topic that was extensively explored and affirmatively, unambiguously addressed by the Court at trial. For example and as noted in the Court’s March 23, 2005 order granting partial default, the Court expressly considered MS’s failure to timely notify CPH and the Court that its Certificate of Compliance was false. The only additional revelation raised in the post-verdict notices is the date on which MS’s in-house counsel knew that certain backup tapes contained e-mails that may have been responsive to CPH’s discovery requests. While the Court does not consider the discovery abuses and misconduct by MS, up to and including the alleged misconduct perpetrated by its legal team as de
 
 minimis
 
 when viewed through the lens of attorney professionalism, when viewed through the lens of a Rule 1.540(h) motion, it cannot be said that the additional attorney conduct revealed by the notices affected the new final judgment, especially considering the rationale behind the Fourth District’s mandate, i.e. CPH’s failure to prove damages at trial. In this strict sense, the conduct revealed by the notices fits squarely within
 
 Flemenbaum’s de minimis
 
 language....
 

 Even considering as true all of CPH’s allegations regarding MS’s in-house legal team’s knowledge, i.e., that the undisclosed backup tapes had potentially responsive e-mails, CPH is not entitled to have the new final judgment set aside. The Fourth District resolved the appeal in MS’s favor on one sole ground — CPH failed to adequately prove its damages at trial. Any information about what MS’s in-house legal team knew or did not know about emails on the backup tapes has no bearing whatsoever on this legal conclusion. Unlike
 
 Stella, Ross,
 
 and
 
 Crowley
 
 where the parties’ assertions, if true, would have altered the final judgments from which relief was sought, CPH’s assertions, even if true, would not have altered the legal course leading to the issuance of the new final judgment.
 

 CPH sets forth two theories that unsuccessfully attempt to refute this conclusion. First, CPH argues that, had the Court known about MS’s fraud, it would have affected the resolution of the sanctions motions. This argument assumes the Court would have meted out sanctions even more severe than the partial default in the first place; second, it assumes that the Court would have entered a total default against MS on all elements including reliance and damages; and third, it assumes that the Court would have “altered the burden of proof as to damages,” which would have affected what the Fourth District reviewed on appeal. Building assumption upon assumption in such a manner has not been the basis of any successful Rule 1.540 motion in other cases this Court has reviewed.
 

 There is no legal precedent supporting CPH’s claim that the Court would or could have ordered MS to disprove the amount of damages. Indeed,
 

 [i]t is well settled in Florida that a default judgment only admits to a plaintiffs entitlement to liquidated damages. “Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between parties, by an arithmetical calculation or by application of definite rules of law ... However, damages are not liquidated if the ascertainment of their exact sum requires the taking
 
 *957
 
 of testimony to ascertain facts upon which to base a value judgment.”
 

 U.S. Fire Ins. Co. v. C & C Beauty Sales, Inc.,
 
 674 So.2d 169, 171 (Fla. 3d DCA 1996) (citations omitted). This securities fraud case clearly involves unliq-uidated damages. The Fourth District reversed due to insufficient expert testimony proving the “benefit of the bargain” amount of damages. Even if the Court had had the benefit of the information in the notices, a trial on
 
 the amount of
 
 damages was inevitable. The best case scenario for CPU would have been a default as to reliance and
 
 the fact of
 
 damages. Thus, the relief CPH asserts it would have received had the Court known this information is without any legal basis.
 

 As a second theory, CPH argues that MS’s alleged misconduct affected the jury’s deliberations. Any effect was rendered moot. The only relevant import that MS’s newly revealed conduct could have had would have been to alter the Discovery Misconduct Statement used by the jury for the sole purpose of determining the propriety of awarding punitive damages. Such a change has no impact on the issue of compensatory damages, which is a prerequisite to any award of punitive damages as found by the Fourth District on appeal.
 
 See Morgan Stanley & Co., Inc. v. Coleman (Parent) Holdings Inc.,
 
 955 So.2d 1124 (Fla. 4th DCA 2007).
 

 At the hearing, CPH articulated an argument that had the Court entered a total default, it would have established the fact of damages and would, thus, have entitled CPH to an award of nominal damages. In turn an award of nominal damages would have entitled CPH to an award of punitive damages. In addition to being highly speculative, this argument directly contradicts the Fourth District’s express findings in the appeal of this case:
 

 Even if CPH established the
 
 fact
 
 of some unquantified damage (which theoretically could have supported a nominal damage award), this is not enough to justify a punitive damage in a fraud case. Punitive damages for fraud cannot be based on nominal damages alone.
 

 Morgan Stanley,
 
 955 So.2d at 1132-33. Thus, this second theory also lacks merit.
 

 In sum, the new final judgment entered in favor of MS followed a clear mandate from the Fourth District accompanied by an opinion explaining that CPH failed to prove its compensatory damages. The Fourth District found that CPH’s strategy included instructing its damages expert to assume a “zero” value on the date of closing.
 
 Id.
 
 at 1127. It is inconceivable how the newly found information in the notices would have affected this choice of strategy for proving damages; whatever information MS’s in-house legal counsel told CPH and the Court, deceitful or not, was ultimately irrelevant as to this choice.
 

 Essentially, the trial court ruled that the alleged fraud, even if true, did not affect the outcome because it had no bearing upon CPH’s failure to prove damages by the proper legal measure. The court rejected CPH’s argument that it was not required to show prejudice because Morgan Stanley’s in-house lawyers committed a fraud on the court.
 

 In
 
 Parker v. Parker,
 
 950 So.2d 388, 392 (Fla.2007), the Florida Supreme Court discussed fraud as a basis for relief from judgment and used the terms “fraud on the court” and “extrinsic fraud” interchangeably. The court distinguished extrinsic fraud from intrinsic fraud, quoting
 
 *958
 
 from its opinion in
 
 DeClaire v. Yohanan,
 
 453 So.2d 375, 377 (Fla.1984):
 

 In essence, extrinsic fraud is conduct which prevents a party from trying an issue before the court, and the prevention itself becomes a collateral issue to the cause; whereas intrinsic fraud is the presentation of misleading information on an issue before the court that was tried or could have been tried.
 

 950 So.2d at 391-92.
 
 DeClaire
 
 explained that only what was defined as “extrinsic fraud” could be considered “fraud on the court.”
 

 The trial court determined that the discovery misconduct committed by Morgan Stanley’s in-counsel constituted intrinsic fraud under Florida law, rather than extrinsic fraud or “fraud upon the court.” Finding that the discovery misconduct did not prevent CPH from participating in the cause and trying issues before the court, the court stated: “Indeed, the court unambiguously considered and addressed sanc-tionable discovery misconduct at trial in entering the partial default. Thus, it can be said that such matters were tried or were so in issue that they might have been tried.”
 

 In the final analysis, however, the court concluded that the intrinsic/extrinsic distinction was not significant, because a fraud claim of any type brought under Rule 1.540(b) is subject to the
 
 Flemenb-aum
 
 requirement to show the effect of the fraud on the final judgment.
 

 CPH relied mainly on federal cases for its argument that litigation misconduct involving attorneys, as opposed to witnesses and parties, constitutes fraud of the court, for which no showing of prejudice is necessary.
 
 See Dixon v. Commr. of Internal Revenue,
 
 316 F.3d 1041, 1046 (9th Cir. 2003) (declaring that, “[fjraud on the court occurs when the misconduct harms the integrity of the judicial process, regardless of whether the opposing party is prejudiced.”).
 

 However, the trial court, noting a split of authority among the federal circuits, sided with the Seventh Circuit’s reasoning that prejudice is required.
 
 See Drobny v. Comm’r of Internal Revenue,
 
 113 F.3d 670, 678 (7th Cir.1997). There, the court stated:
 

 We are of the opinion that the petitioners were required to demonstrate, not only that the respondent engaged in conduct that was intended to mislead the court, but — of paramount importance— that the actual conduct affected the outcome of their case.... We do not agree with the petitioner’s argument that a final judgment of the Tax Court should be subject to attack (possibly, as in this case, many years later) when the allegedly improper conduct had no effect on the outcome of the decision. The rule of finality lends stability to our legal system, and it is especially impoi'tant in this litigious era when adversely affected parties seize upon almost any opportunity to prolong litigation.
 

 The Seventh Circuit’s position is more consistent with Florida policy considerations favoring the finality of judgments and with Florida law requiring a prejudicial effect on the outcome of a case. Without doubt, the public interest in the fairness and integrity of the judicial process in an important policy concern. But, as the trial court pointed out in its order, “[a] Rule 1.540(b) motion is not the appropriate vehicle for handling attorney misconduct that does not prejudice the final judgment ... Rather, such misconduct is more appropriately vindicated via criminal contempt proceedings and/or grievances filed with the Florida Bar.” Because the trial court correctly determined that CPH was unable to show that the fraud affected the
 
 *959
 
 outcome of the ease, it did not abuse its discretion in denying the motion for relief from judgment.
 

 Affirmed.
 

 MAY, J., and GARCIA-WOOD, MARINA, Associate Judge, concur.
 

 [1]
 

 . A different circuit judge, the Honorable Elizabeth Maass, presided over the trial.