920 So.2d 777 (2006)
GOLDEN YACHTS, INC., etc., Appellant,
v.
William Scott HALL, Sheridy Hall and Water-Land Manufacturing, Inc., Appellees.
Nos. 4D04-1945, 4D04-4269.
District Court of Appeal of Florida, Fourth District.
February 15, 2006.
*778 Hinda Klein of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for appellant.
Raymond M. Christian, P.A., Palm Beach Gardens, and Philip M. Burlington of Burlington & Rockenbach, P.A., West Palm Beach, for appellees Hall.
*779 Steven P. Befera of Peterson Bernard, Fort Lauderdale, for appellees Water-Land Manufacturing Inc.
MAY, J.
Golden Yachts, a boat sales company and a defendant, appeals a jury verdict in favor of the plaintiffs. It raises several issues. We affirm on all of them, but write to address Golden Yachts' argument that the trial court erred in admitting evidence to support an adverse inference instruction on the plaintiffs' spoliation claim.
William Scott Hall fell while aboard a boat at Golden Yachts. The boat was supported by a boat cradle, which consisted of two "H-frames" manufactured by Water-Land Manufacturing, Inc., a co-defendant, and assembled with wood and hardware that Golden Yachts purchased from Home Depot. The plaintiff sustained severe injuries to his feet, spine, and one hand, resulting in permanent disability.
After the accident, Golden Yachts placed the cradle's component parts next to a storage container. Several hours later, a videographer filmed the boat yard. Within the week, the manufacturer's sales representative inspected and photographed the damaged boat cradle. Approximately ten days after the accident, plaintiffs' counsel wrote to Golden Yachts requesting that all material from the cradle be preserved and offering to store the material if Golden Yachts was unwilling or unable to do so. Within a month of the accident, Golden Yachts hired an investigator. His investigation included photographing and measuring the debris from the boat cradle and interviewing employees and other witnesses to the accident.
The plaintiff and his wife initially brought claims for negligence and loss of consortium against Golden Yachts. Subsequently, the complaint was amended to add the manufacturer as a defendant. Golden Yachts filed a cross-claim against the manufacturer for indemnity and contribution.
A year after the suit was filed, two years after the accident, both the plaintiffs and the manufacturer requested inspection of the boat cradle debris. Golden Yachts' manager gathered up and set aside two H-frames that he believed to have been involved in the accident. None of the wood or hardware from the accident could be located. The experts who examined these H-frames determined, through comparison to the photos taken after the accident, they were not the ones involved in the accident. Golden Yachts could not explain what happened to the items and why they had not been securely stored. It could also not explain how it came into possession of a second pair of damaged H-frames.
About the same time, the investigator hired by Golden Yachts purged his files. He testified that his common business practice was to turn all investigative material over to the hiring party and not retain records. Golden Yachts denied receiving the investigator's photographs, but was able to produce some photocopies of some of the photographs.[1]
The plaintiffs again amended the complaint, this time to include a claim for spoliation of evidence against Golden Yachts. Prior to trial, however, this court rendered an opinion disallowing first-party spoliation claims. See Martino v. Wal-Mart Stores, Inc., 835 So.2d 1251 (Fla. 4th *780 DCA 2003), approved, 908 So.2d 342 (Fla. 2005).
As a result, the manufacturer filed a Motion for Sanctions and for Negative Inferences against Golden Yachts. The trial court denied the motion for sanctions but granted the request for an adverse inference jury instruction. Golden Yachts in turn filed a motion to exclude any evidence relating to its loss of the boat cradle evidence and its production of the unrelated damaged H-frames. Golden Yachts suggested the court use a stipulation of facts in lieu of admitting evidence; however, the parties did not agree to a stipulation. The court did not rule on the motion in limine, but at trial it overruled similar objections by Golden Yachts to the introduction of evidence.
The jury found Golden Yachts one hundred percent liable. The trial court denied Golden Yachts' motions for new trial and for remittitur. From the final judgment entered in conformance with the jury verdict, Golden Yachts now appeals.
"A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion." Dessaure v. State, 891 So.2d 455, 466 (Fla. 2004) (citing Blanco v. State, 452 So.2d 520, 523 (Fla.1984)). The same standard applies to rulings on motions in limine. State v. Polak, 598 So.2d 150, 152 (Fla. 1st DCA 1992).
Golden Yachts argues the trial court has a choice in handling spoliation claims. It can either admit evidence of spoliation or it can give an adverse inference instruction, but it cannot do both. It argues the trial court committed reversible error by admitting evidence that Golden Yachts lost the component parts and provided the wrong H-frames for inspection and testing and by giving the adverse inference instruction to the jury.
The plaintiffs and the manufacturer both respond that it is necessary to admit evidence to support the adverse inference instruction. They argue that without introducing evidence, the jury would be unable to determine the basis for the instruction and how to apply it.
We find no error in the trial court's rulings on this issue. The adverse inference instruction does not relieve a party from its burden of proof at trial. Anesthesiology Critical Care & Pain Mgmt. Consultants, P.A. v. Kretzer, 802 So.2d 346, 351 (Fla. 4th DCA 2001). Spoliation is "[t]he intentional destruction, mutilation, alteration, or concealment of evidence[.]" Black's Law Dictionary 1437 (8th ed.2004). In cases involving negligent spoliation, courts prefer to utilize adverse evidentiary inferences and adverse presumptions during trial to address the lack of evidence. In cases involving intentional spoliation, courts more often strike pleadings or enter default judgments. Martino v. Wal-Mart Stores, Inc., 908 So.2d 342, 346-7 (Fla.2005).
The spectrum of remedies includes allowing the party who has been aggrieved by the spoliation to present evidence about the preaccident condition of the lost evidence and the circumstances surrounding the spoliation, as well as instructing the jury on the inferences that may be drawn from the spoliation. These remedies may be cumulative, as determined by the judge from the circumstances of each case, in the exercise of broad discretion.
Gath v. M/A-COM, Inc., 440 Mass. 482, 802 N.E.2d 521, 527 (2003) (citations omitted).
Nothing in Florida's Evidence Code prevents "the drawing of an inference that is appropriate." § 90.301(3), Fla. Stat. (2004). An inference, unlike a presumption, is "[a] *781 logical and reasonable conclusion of a fact not presented by direct evidence but which, by process of logic and reason, a trier of fact may conclude exists from the established facts." Black's Law Dictionary 778 (6th ed.1990); see Charles W. Ehrhardt, Florida Evidence § 301.1 (2002 ed.).
Prior to a court exercising any leveling mechanism due to spoliation of evidence, the court must answer three threshold questions: 1) whether the evidence existed at one time, 2) whether the spoliator had a duty to preserve the evidence, and 3) whether the evidence was critical to an opposing party being able to prove its prima facie case or a defense. Jordan ex rel. Shealey v. Masters, 821 So.2d 342, 347 (Fla. 4th DCA 2002). See, e.g., Hagopian v. Publix Supermarkets, Inc., 788 So.2d 1088, 1090 (Fla. 4th DCA 2001); Fed. Ins. Co. v. Allister Mfg. Co., 622 So.2d 1348, 1351 (Fla. 4th DCA 1993). Unlike an adverse presumption instruction, where the court must find the spoliator was duty-bound to preserve the evidence, "an adverse inference may arise in any situation where potentially self-damaging evidence is in the possession of a party and that party either loses or destroys the evidence." Martino, 835 So.2d at 1257.
The evidence here shows that the H-frames and the component parts of the cradles existed, were involved in the accident, and were last in the possession of Golden Yachts. The plaintiffs notified Golden Yachts of the need to preserve the items within ten days of the accident. Yet, none of the cradle material was preserved. The lack of this crucial evidence hampered the plaintiffs in proving their claims and the co-defendant from proving its defense. The trial court was able to answer the three threshold questions in the affirmative, thereby justifying the use of the adverse inference instruction. See Am. Hospitality Mgmt. Co. of Minn. v. Hettiger, 904 So.2d 547, 551 (Fla. 4th DCA 2005).
Golden Yachts also suggests that evidence of discovery misconduct is improper for admission at trial, and should be subject only to the imposition of sanctions by the court. While courts have the authority to impose sanctions for discovery violations, it does not prevent the jury's consideration of evidence relevant to the spoliation claim.
Affirmed.
POLEN, J., and ROTHSCHILD, RONALD J., Associate Judge, concur.
NOTES
[1] Golden Yachts also failed to fully and accurately answer interrogatories propounded by the plaintiff. It failed to identify the employee responsible for deciding what materials were required to construct the boat cradles and who had purchased them. It further failed to disclose an eyewitness to the accident who provided first aid to the plaintiff.