MORRIS, Judge.
Aimee Osmulski appeals a final judgment entered in a premises liability action against Oldsmar Fine Wine, Inc. (OFW). The action arose after Osmulski slipped and fell at a store owned by OFW. After a jury trial, wherein the jury determined Osmulski was 65% liable and OFW was 35% liable, the trial court entered final judgment in Osmulski’s favor in an amount of $45,128.84 plus an additional $39,612.02 for costs.
On appeal, Osmulski contends that the trial court erred as a matter of law in denying her request for a rebuttable presumption jury instruction because video evidence of the incident was automatically deleted from OFW’s video surveillance cameras and, therefore, was not available to be discovered. She requested an instruction either that OFW was negligent or that the missing video would .be unfavorable to OFW. The trial court declined to give the requested jury instruction and ruled that there could be no spoliation of this evidence because Osmulski had not asked OFW to preserve it.
*391 Based on the facts of this case, we hold that the trial court correctly determined that there was no spoliation of evidence, and we therefore affirm the final judgment. However, we write to address the law on the issue of spoliation of evidence.
I. Background
Osmulski shattered her right wrist after slipping and falling in OFW’s store. Os-mulski underwent two surgeries to repair her wrist, and experts testified at trial that additional surgeries may be needed in the future. Within a week of the incident, Osmulski and OFW’s insurance carrier communicated several times. Osmulski gave a recorded statement to an agent of OFW’s insurance carrier. When asked how the incident happened, Osmulski stated that she slipped about two steps beyond the front door mat when she entered OFW’s store. Osmulski further explained that the mat was wet because it had been raining that day. Osmulski informed OFW’s insurance carrier about her first surgery and about how much time she had missed from work as a result of her injury. The insurance carrier told Osmulski that after she completed her medical treatment, the insurance carrier would be able to follow up on her claim for pain and suffering, medical bills, and anything else. The insurance carrier also sent Osmulski a letter indicating that it was gathering documentation “to investigate the liability aspects of your fall,” and it directed Osmul-ski to “forward any medical bills that your insurance has not taken care of.”
Ultimately, the insurance carrier failed to settle Osmulski’s claim. Osmulski filed suit, and a few months thereafter, she served a request to produce any video surveillance recordings of the premises from the day of the incident. OFW responded that it had no such surveillance videos.
In February 2009, Osmulski deposed OFW’s principal on this and other issues. At his deposition, OFW’s principal testified that, to the best of his knowledge, all sixteen of his surveillance cameras were fully operational on the day in question and would have recorded the incident. He also testified that the video surveillance system only retains video surveillance recordings for sixty days[1] but that there was no standard procedure for storing the recordings. He admitted that he could have made a copy of the recordings before they were automatically deleted and said that he had done so in the past for the police when his store had been robbed. The reasons he provided for not making copies in this case were that his insurance agent told him Osmulski was seeking only her medical bills and that no one ever asked him to preserve the video recordings. He said he never even looked at the videos from this case. Additionally, there was no evidence to confirm that any video surveillance recordings were actually made or, if made, what they actually contained.
Although OFW’s principal admitted that he had been involved in an earlier slip and fall case and, in fact, had been deposed in that case, he was unable to provide much information about it. Eventually, Osmul- *392 ski obtained discovery related to that earlier case, and she learned that OFW’s principal testified that he personally watched the video recordings in that case because he wanted to see if the plaintiff had been running upon entry into the store.[2]
Shortly before the case was scheduled for trial, Osmulski filed a motion asserting OFW’s intentional spoliation of the video surveillance recording of the incident and customer receipts for the day of the incident. Osmulski argued that OFW failed to preserve these items despite knowing that an insurance claim had been filed. Osmulski further argued that these items were necessary to prove her case that store patrons had tracked rainwater onto the store floor and that OFW had not removed the water or posted any kind of warning of the wet area. She stated that these items were also necessary to disprove OFW’s assertions that she ran or walked too quickly into the store or that she was impaired by drugs and/or alcohol.
Osmulski requested various remedies, one of which was a jury instruction that due to the absence of the video surveillance recordings, there was at least a presumption that they would have been unfavorable to OFW. Osmulski also requested an adverse inference jury instruction that OFW was negligent. The trial court denied the motion.
Subsequently, Osmulski filed motions for sanctions against OFW and OFW’s counsel for the alleged intentional destruction of the video. The trial court denied the first motion, and although the trial court initially deferred ruling on the portion of the second motion dealing with the spoliation argument, the trial court ultimately concluded at trial that Osmulski was not entitled to any relief for OFW’s spoliation of the video surveillance recordings because she never asked OFW to preserve it.
II. Analysis
A. Standard of review
The parties dispute the appropriate standard of review in this case. Because the issue of whether Osmulski was entitled to a spoliation jury instruction was decided by the trial court as an issue of law, we apply the de novo standard of review. See Sebring Assocs. v. Aumann, 673 So.2d 875, 876 (Fla. 2d DCA 1996) (providing that appellate court will apply de novo review to a trial court’s ruling on a question of law).
B. OFW did not have a duty to preserve evidence in this case because there was no written request to do so.
In order for a court to effect any sort of remedy for a party’s alleged spoliation of evidence, the court must determine whether: (1) “the evidence existed at one time,” (2) “the spoliator had a duty to preserve the evidence, and” (3) “the evidence was crucial to an opposing party[’s] being able to prove its prima facie case or a defense.” Golden Yachts, Inc. v. Hall, 920 So.2d 777, 781 (Fla. 4th DCA 2006) (citing Jordan ex rel Shealey v. Masters, 821 So.2d 342, 347 (Fla. 4th DCA 2002)). Here, the trial court based its refusal to give Osmulski’s requested instructions on the second factor: whether OFW had a duty to preserve the evidence.
We agree with the trial court’s determination that no such duty existed. The trial court relied on Golden Yachts, Inc., 920 So.2d 777, for the conclusion that Osmulski was not entitled to a spoliation jury in *393 struction because she failed to request that the video recordings be preserved. Os-mulski argues that even though she did not make such a request, OFW had a duty to preserve the evidence because her claim of negligence was reasonably foreseeable. Indeed, the court in Golden Yachts, Inc. cited American Hospitality Management Co. of Minnesota v. Hettiger, 904 So.2d 547 (Fla. 4th DCA 2005), which clearly states that where a defendant has evidence within its control, it can “be charged with a duty to preserve evidence where it could reasonably have foreseen the [plaintiffs] claim.” Id. at 549. Thus, it could be argued that in the absence of a written request to preserve such evidence, as long as a plaintiffs claim is reasonably foreseeable, a formal request to preserve the evidence is not required in order for a plaintiff to be entitled to a jury instruction on spoliation.[3]
We observe that in recent years, the use of digital video technology has significantly increased in our communities. Yet there are many uncertainties regarding this video technology as it relates to the resolution of legal disputes. The recording systems may vary greatly in quality as well as methodology. Some recordings may be erased automatically, and some may be erased manually. Some recordings may not be in the immediate control of the ultimate defendant. The recordings may or may not contain information that is critical to the civil action. Given this myriad of uncertainties, it would not be fair to businesses or homeowners to require them to preserve video evidence in the absence of a written request to do so. Accordingly, we decline to hold that the trial court erred in its ruling. Rather, we hold that if a defendant has knowledge that an accident or incident has occurred on its property and that same defendant has a video camera that may have recorded the accident or incident, that defendant has a duty to obtain and preserve a copy of any relevant information recorded by that camera if a written request to do so has been made by the injured party or their representative prior to the point at which the information is lost or destroyed in the normal course of the defendant’s video operations. In so holding, we note that this issue would be better resolved by statute and hope that the legislature will soon address it.
Even if Osmulski was not required to make a written request for the preservation of the video evidence, she would not be entitled to a spoliation jury instruction under the reasonably foreseeable standard upon which she bases her argument. We recognize that courts in other jurisdictions have found defendants to be on notice that a claim is reasonably foreseeable once they have knowledge that a claim has been submitted to their insurance carrier. See, e.g., Smith v. Shipping Utils., Inc., No. Civ. 05-500-GPM, 2005 WL 3133494 at *3 (S.D.Ill.2005) (holding that there was a reasonable possibility that trial court would have ruled against defendant when deciding whether reasonable person should have foreseen that evidence was material to potential civil action where plaintiff sent insurance carrier a letter referencing both a compensable work accident and personal injury and where workers’ compensation carrier sent letter to plaintiffs counsel discussing right of subrogation to any settlement); Keene v. Brigham & Women’s Hosp., Inc., 439 Mass. 223, 786 N.E.2d 824, 833 (2003) (holding that defendant’s duty to preserve evidence arose on day that *394 plaintiffs filed notice with defendant’s insurance carrier of a potential claim based on plaintiffs injuries).
But here, at the time the video recordings were discarded or taped over, no lawsuit had been filed, no demand for preservation of the evidence had been made,[4] and OFW’s principal testified that even though he was aware that Osmulski had made a claim with the insurance carrier, he had been told that Osmulski was only seeking payment for her medical expenses. Thus, OFW was not on notice of a claim beyond medical expenses. Consequently, OFW did not have a duty to preserve the video recordings even under the reasonably foreseeable standard.
Osmulski places importance on the fact that OFW had been involved in another slip and fall case and that OFW’s principal testified in that earlier case that he reviewed the video recording to see if the plaintiff had been running. Osmulski contends that that fact indicates that OFW’s principal was aware of the importance of video evidence and that that should have put him on notice of potential litigation in this case. We are not persuaded by this argument. OFW’s principal testified in this case that the insurance carrier told him that Osmulski was only seeking payment of her medical bills, and the jury was free to accept that explanation.
While we do not need to reach the issue of which spoliation instruction Osmulski would have been entitled to if OFW had a duty to preserve the evidence, we believe that clarification on this issue is necessary. A rebuttable presumption of negligence may be available in certain contexts. See, e.g., Pub. Health Trust of Dade Cnty. v. Valcin, 507 So.2d 596 (Fla.1987) (adopting rebuttable presumption of negligence where health care provider was unable to produce essential medical records in medical malpractice action). But in a case like this which does not involve a statutory duty to provide medical records, the more appropriate remedy — if Osmulski had proved entitlement to it — would be an adverse inference instruction from which a jury could infer that the videotape in this case was unfavorable to OFW. See Hettiger, 904 So.2d at 549-51 (noting that Valein involved a statutory duty running from a health care provider to a patient to provide medical records and holding that adverse inference instruction was more appropriate in negligence case involving lost equipment).
The distinction between the two instructions is important. While a presumption “compels the trier of fact to find the presumed fact if it finds certain basic facts to be present,” it is stronger than an inference which “is a logical deduction of fact that the trier of fact may draw from existence of another fact or group of facts.” Charles W. Ehrhardt, Florida Evidence § 301.1 at 96-97 (2008 ed.). A “ ‘Valein presumption shifts the burden of proof to ensure that a jury decides the issue of negligence’ ” thereby “ ‘supplying] an essential element of the case.’ ” Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., 881 So.2d 565, 582 (Fla. 3d DCA 2004) (quoting 6 Fla. Practice, Personal Injury & Wrongful Death Actions § 26.6 (2004 ed.) (footnotes omitted)). But an “ ‘adverse inference merely allows counsel to argue to the jury the inference that the evidence was lost because it was damaging to the opposing party’s case. The jury may accept or reject the inference as it sees fit.’ ” Id. (quoting id.). If OFW had a duty to preserve the evidence, *395 an adverse inference instruction would have been appropriate in this case.
III. Conclusion
In sum, we affirm the final judgment because we conclude that the trial court did not err in denying Osmulski’s request for a spoliation jury instruction because Osmulski never made a written request for preservation of the evidence.
Affirmed.
ALTENBERND and NORTHCUTT, JJ., Concur.

. In OFW's response to Osmulski's motion for sanctions against OFW’s counsel and motion for rehearing/reconsideration of the March 18, 2010, order denying Osmulski’s motion for sanctions based on spoliation, OFW asserted that its principal was mistaken and that he had subsequently learned that the video recordings were only kept for seven days. However, an unsworn pleading is not evidence, see Coggan v. Coggan, 239 So.2d 17, 19 (Fla.1970), and OFW did not present any evidence to substantiate this assertion. Whether the recordings were retained for sixty or merely seven days is not crucial to our disposition.

. Osmulski relies on this fact as support for her argument that her claim was reasonably foreseeable and, therefore, that OFW should have preserved the video recordings in this case.

. Even under this reasonably foreseeable standard, the plaintiffs failure to make such a request would certainly be considered as a factor in determining whether a plaintiff's claim was reasonably foreseeable.

. The very facts of this case demonstrate how a defendant may be confused as to whether he or she has a duty to preserve evidence in the absence of a written request.