PALMER, J.
Ford Motor Company (Ford) appeals the order entered by the trial court granting Peggy and Ralph Stimpson various forms of post-judgment relief. We reverse and remand for reinstatement of the judgment.
In January 2004, Peggy and Ralph Stimpson filed a products liability lawsuit against Ford based on an October 2008 automobile accident during which the Stimpsons’ 1991 Ford Aerostar van allegedly suddenly accelerated from a standstill position. Peggy Stimpson was seriously injured in the accident. The Stimpsons’ theory of liability was that their van’s cruise control system was defectively designed/manufactured because (1) the system was susceptible to allowing electromagnetic interference (EMI) to cause a malfunction that would unexpectedly open the throttle without driver input (pressure on the gas pedal), causing sudden acceleration (SA) from a standstill position, and (2) Ford was aware of, but did nothing to address, the defect. The foundation for the Stimpsons’ claim was the theory that the root cause of SA is the interaction between electronics in the engine and in the cruise control system. Notably, in order to overcome Florida’s products liability statute of repose,[1] the Stimpsons sought to invoke the statutory provision which tolls the repose period for any time during which the manufacturer actively conceals the defect.[2]
The Stimpsons filed a pre-trial motion seeking to strike Ford’s answer and affirmative defenses. The motion alleged that Ford committed fraud on the court by concealing, from both government regulators and the public, its knowledge that its vehicles could suddenly accelerate, and by promoting the erroneous defense theory that the instant accident was caused by Mr. Stimpson’s pedal misapplication (stepping on the gas pedal instead of the brake pedal). The trial court reserved ruling on the motion.
The matter proceeded to a four-week trial. The jury returned a special verdict in favor of Ford, finding that (1) Ford did not place the 1991 Ford Aerostar on the market with a defect that was the legal cause of Peggy Stimpson’s injury, and (2) there was no negligence on the part of Ford that was a legal cause of Peggy Stimpson’s injury. The trial court entered judgment on the verdict.
*405 The Stimpsons filed motions seeking alternative forms of post-judgment relief, including rule 1.540(b)(8) relief from judgment [3] and a new trial. They sought relief based primarily on the theory that Ford committed fraud on the court by presenting its pedal misapplication defense because Ford knew, since the early 1980s, that SA was caused by EMI. Ford responded there could be no finding of fraud on the court because all of the evidence regarding the Stimpsons’ concealment theory was presented to the jury on the statute of repose issue, and because Mr. Stimpson testified at trial that he may have touched the gas pedal during the alleged SA incident.
The trial court conducted extensive post-judgment hearings. The court thereafter granted the Stimpsons rule 1.540(b)(3) relief based on its finding that Ford committed fraud on the court. The court struck Ford’s answer and affirmative defenses, entered judgment on liability in favor of the Stimpsons, and ordered a trial on the issue of damages. The court also entered an alternative ruling conditionally granting the Stimpsons a new trial based upon findings both of fundamental error and that the jury’s verdict was against the manifest weight of the evidence. Ford challenges these rulings.
Ford first seeks reversal of the trial court’s grant of rule 1.540(b)(3) relief, arguing that the court erred in concluding that Ford committed fraud on the court during the instant proceedings.[4] We agree.
A trial court’s decision concerning whether to impose a sanction against a party for committing fraud on the court “is subject to review under the abuse of discretion standard.” Ramey v. Haverty Furniture Cos., 993 So.2d 1014, 1018 (Fla. 2d DCA 2008). Accord Suarez v. Benihana Nat’l of Fla. Corp., 88 So.3d 349, 352 (Fla. 3d DCA 2012).
Fraud on the court is “an egregious offense against the integrity of the judicial system.” Wells Fargo Bank, N.A. v. Reeves, 92 So.3d 249, 252 (Fla. 1st DCA 2012).
Fraud on the court occurs where “it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party’s claim or defense.” Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998).
Robinson v. Weiland, 988 So.2d 1110, 1111 n. 1 (Fla. 5th DCA 2008). Accord Andrews v. Palmas De Majorca Condo., 898 So.2d 1066, 1069 (Fla. 5th DCA 2005).
In Parker v. Parker, 950 So.2d 388, 392 (Fla.2007), the Florida Supreme Court *406 discussed fraud as a basis for relief from judgment and used the terms “fraud on the court” and “extrinsic fraud” interchangeably. The court distinguished extrinsic fraud from intrinsic fraud, quoting from its opinion in DeClaire v. Yohanan, 458 So.2d 375, 377 (Fla.1984):
In essence, extrinsic fraud is conduct which prevents a party from trying an issue before the court, and the prevention itself becomes a collateral issue to the cause; whereas intrinsic fraud is the presentation of misleading information on an issue before the court that was tried or could have been tried.
950 So.2d at 391-92. DeClaire explained that only what was defined as “extrinsic fraud” could be considered “fraud on the court.”
Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co., 20 So.3d 952, 957-958 (Fla. 4th DCA 2009).
The trial court’s order stated four grounds to support its conclusion that Ford committed fraud on the court. We will address each ground separately.
The trial court first found that Ford committed fraud on the court by unlawfully destroying evidence indicating that there was a defect in Ford’s cruise control system. The court stated:
Ford deemed its Service Investigation Reports relating to sudden acceleration to be unrelated to safety, and thus destroyed them within one year after they were created. However, those reports were patently relevant to safety and thus required by federal law to be kept for five years. Because Ford unlawfully disposed of those documents, numerous engineering reports identifying the cruise control electronics as the cause of sudden acceleration were concealed from [the National Highway Traffic Safety Administration].
The record does not support this ruling.
The Stimpsons presented evidence suggesting that, during the late 1980s through 2002, Ford unlawfully disposed of its Service Investigation Reports (SIRs) by failing to retain them for five years. However, there was no evidence presented, either at trial or during post-judgment proceedings, showing that the SIRs contained engineering reports identifying a defect in the cruise control system as being the cause of SA, nor any other evidence to support the trial court’s conclusion that, because of Ford’s alleged unlawful destruction of SIRs, “numerous engineering reports identifying the cruise control electronics as the cause of sudden acceleration were concealed from NHTSA.” Accordingly, the trial court abused its discretion by finding that Ford committed fraud on the court in its handling of the SIRs. Additionally, even if Ford did improperly dispose of its SIRs from the 1980s through 2002, such action would not constitute fraud on the court in this matter because, at the time of Ford’s alleged improper action, the Stimpsons’ accident had not yet taken place, this lawsuit had not yet been filed, there was no matter pending between the parties, and there was no evidence showing that the instant action was foreseeable by Ford. As such, there was no proof that Ford’s handling of its SIRs was calculated to interfere with the proper adjudication of this matter. See generally Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., 881 So.2d 565, 579 n. 11 (Fla. 3d DCA 2004) (listing cases where a duty to preserve evidence is said to arise once a party knows of litigation or potential for litigation). See also Osmulski v. Oldsmar Fine Wine, Inc., 93 So.3d 389 (Fla. 2d DCA 2012); Am. Hospitality *407 Mgmt. Co. of Minn. v. Hettiger, 904 So.2d 547 (Fla. 4th DCA 2005).
The trial court next concluded that Ford committed fraud on the court by making false representations to the National Highway Traffic Safety Administration (NHTSA) regarding EMI’s ability to cause SA. The court wrote:
Ford represented to NHTSA that it had identified no components that could cause sudden acceleration; that there were no design changes in its throttle control system that were correlated with sudden acceleration; and that if sudden acceleration were caused by a design failure, it would leave physical evidence of multiple component failures. These claims were false and are contradicted by the SIRs, the Updegrove study, and the engineering reports commissioned by Ford’s Technical Affairs Committee. Accordingly, Ford knew that NHTSA’s 1989 “Examination of Sudden Acceleration” was predicated upon false information. Ford’s copious use of that report throughout the trial was likewise misleading and fraudulent.
This finding is also not supported by the record.
Neither the SIRs, nor the Updegrove study, nor Ford’s engineering reports expressly contradicted Ford’s representations to NHTSA. Compare Wenwei Sun v. Aviles, 53 So.3d 1075 (Fla. 5th DCA 2010) (holding that actions of plaintiffs in repeatedly lying, over the course of six years, as to motorist’s employment and ability to perform even the most basic functions of daily life warranted dismissal of their personal injury action for perpetrating fraud on the court. Additionally, the trial court abused its discretion in finding that Ford committed fraud on the court by using NHTSA’s 1989 SA report during trial because any improper use would have been intrinsic, not extrinsic, fraud. Coleman. Moreover, even if Ford did make false representations to NHTSA, those representations occurred more than 10 years before the Stimpsons’ accident; therefore, they did not constitute fraud on the court in this case because there was no showing that such conduct was calculated to interfere with the proper adjudication of this lawsuit. Osmulski; Am. Hospitality; Palmas.
The trial court also concluded that Ford committed fraud on the court by cross-examining the Stimpsons’ expert, Dr. William Berg, about his exemplar testing. The court wrote:
Notwithstanding that Ford had moved in limine to prevent plaintiffs’ expert Dr. Berg from discussing his exemplar testing, it proceeded to inquire about those tests on cross-examination and implied to the jury that Dr. Berg’s findings were unreliable because the tests had not been videotaped.
Again, this finding is not supported by the evidence.
Two exemplar testing episodes were undertaken by the Stimpsons: the first was pre-trial, and the second took place during trial. The testing was performed for the purpose of explaining how tire marks, like those found at the accident scene, could be created. Ford did not receive prior notice of either episode. The first episode was not recorded by the Stimpsons; therefore, Ford filed a pretrial motion in limine seeking to prohibit the Stimpsons’ expert, Dr. Berg, from testifying about the testing. However, in lieu of having the trial court rule on the motion, counsel for the Stimpsons agreed to refrain from discussing the testing during Dr. Berg’s direct examination, with the understanding that if Ford cross-examined Dr. Berg about the testing, then the Stimpsons’ counsel could question him *408 about it on re-direct. Cross-examination of Dr. Berg did include questioning about the first testing episode and, thereafter, re-direct (as well as rebuttal) testimony was submitted. As such, Ford’s cross-examination of Dr. Berg about the first episode was not improper because the cross-examination took place as contemplated by the parties. Accordingly, this cross-examination did not constitute fraud on the court because there was no showing of any unconscionable scheme calculated by Ford to interfere with the judicial system’s ability to adjudicate this matter. Cox. Also, any improper cross-examination of Dr. Berg would have constituted intrinsic, not extrinsic, fraud. Coleman.
The trial court’s final finding of fraud on the court was based on its conclusion that Ford’s reconstruction experts presented false and misleading testimony. The court’s order states:
Through its reconstruction experts Joe Kent and Karl Stopschinski, Ford presented false and misleading testimony by telling the jury that the only way the tire marks could be made would be if Mr. Stimpson had mistakenly applied the accelerator full throttle before gear engagement.
The record does not contain evidence supporting this finding either.
At trial, the focus of Kent’s and Stop-schinski’s opinion testimony was that, based on their accident reconstruction, which included consideration of the fact that Mr. Stimpson claimed to have been braking during the entire SA incident, tire marks could not have been created at the scene of the Stimpsons’ accident because tire marks can only occur at 100% throttle with no braking. Notably, Dr. Berg agreed that there could be no tire marks if, as Mr. Stimpson claimed, he was applying the brakes. As such, Ford’s experts did not present false and misleading testimony because they did not testify that the only way tire marks could be created was by pedal misapplication, but rather, they testified that tire marks could not have been created in this case if Mr. Stimpson were braking. Accordingly, the court abused its discretion in finding that Ford committed fraud on the court because Kent and Stopschinski did not present testimony which improperly influenced the trier of fact. Cox. Compare Hoegh v. Estate of Johnson, 985 So.2d 1185, 1186 (Fla. 5th DCA 2008) (recognizing that appellant’s act of knowingly seeking to have a forged will admitted to probate constituted egregious conduct and an attempt to perpetrate a fraud on the court). Also, even if there had been improper conduct by Ford in presenting their expert’s testimony, such conduct would have constituted intrinsic, not extrinsic, fraud. Coleman.
Ford also seeks reversal of the trial court’s conditional grant of a new trial. The court granted the Stimpsons a new trial on two alternative grounds: (1) fundamental error, and (2) the verdict was against the manifest weight of the evidence. Each ground will be addressed separately.
A trial court’s grant of a new trial is reviewed for an abuse of discretion. Allstate Ins. Co. v. Daugherty, 638 So.2d 612, 613 (Fla. 5th DCA 1994).
First, as to the court’s finding of fundamental error, in Fravel v. Haughey, 727 So.2d 1033 (Fla. 5th DCA 1999), our court explained the concept of fundamental error as it applies to civil lawsuits. Citing Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580, 586 (Fla. 2d DCA 1996), our court explained that the error must be “so extreme that it could not be corrected by an instruction if an objection had been lodged, and that it so damaged the fairness of the trial that the public’s interest in our *409 system of justice justifies a new trial even when no lawyer took the steps necessary to give a party the right to demand a new trial.” 727 So.2d at 1037 n. 4.
The trial court’s first finding of fundamental error was based on the circumstances surrounding the Stimpsons’ tire-mark exemplar testing. The trial court concluded that Ford’s cross-examination of Dr. Berg regarding his exemplar testing, coupled with Ford’s comments in closing argument regarding the testing, constituted fundamental error:
After filing a motion in limine to preclude Dr. Berg’s exemplar testing, plaintiff agreed not to elicit that testimony and adhered to that agreement. Nonetheless, Ford, reversing its position, drew out the testing on cross-examination and impeached Dr. Berg by implying that the reason his testing was not videotaped was that plaintiffs wanted to protect themselves if the results didn’t turn out the way they wanted and, further, that they had acted improperly by not inviting Ford to observe the tests. .... This theme was carried over into closing argument, where Ford’s counsel suggested that it was plaintiffs’ counsel who had committed fraud and concealment and that Ford’s counsel was “really upset about that,” injecting his personal beliefs for the assessment of the jury. It is reasonable to conclude that the jury went along with Ford’s counsel’s exhortation to be angry with plaintiffs’ counsel and Dr. Berg for committing these allegedly fraudulent acts. This misconduct sullied the entire proceedings and deprived plaintiffs of a fair trial and constitutes fundamental error.
We concluded earlier that Ford’s cross-examination of Dr. Berg concerning the first testing episode was not improper. Through direct and cross-examination, the jury was made aware that Dr. Berg had repeated his exemplar testing during the course of the trial. Thus, counsel for Ford was entitled to question Dr. Berg concerning the circumstances surrounding the second testing. Furthermore, the court’s allowance of Ford’s closing argument relating to the exemplar testing was not error, because all of Ford’s statements referred to matters and inferences created by the evidence during trial. As such, the court abused its discretion by granting a new trial on the basis of Ford’s handling of Dr. Berg’s exemplar testing.
The trial court also found that fundamental error occurred during trial because Ford improperly impugned the integrity of opposing counsel. The court wrote:
Ford’s cross-examination of Dr. Berg and its closing argument were tantamount to accusing plaintiffs’ counsel of orchestrating a conspiracy between plaintiffs and their expert in an attempt to trick the jury, hide evidence, and perpetrate a fraud on the court. This devastated any chance plaintiffs might have had to secure a fair trial in front of a jury who had been told not to trust plaintiffs’ counsel.
The court abused its discretion in so ruling because, as discussed above, the cross-examination and closing argument submitted by Ford’s counsel relating to Dr. Berg’s exemplar testing were proper since they were made in direct response to what occurred during trial, in front of the jury. Without any objection from the Stimpsons, the jury was made aware that Dr. Berg’s first exemplar testing was not documented, and that he performed his second exemplar testing during the trial so that the testing could be videotaped. The jury was also told that the second testing was done by Dr. Berg on the Stimpsons’ request and unbeknownst to Ford or the court.
The trial court further concluded that a new trial was warranted because *410 Ford presented fraudulent accident reconstruction evidence through its experts. The court wrote:
Ford’s reconstruction expert Joe Kent told the jury that the only way the tire marks in the Stimpsons’ carport could have been made was by Mr. Stimpson depressing the accelerator pedal to the floor, full throttle, before the car was placed into drive gear. Ford’s other expert Karl Stopschinski likewise told the jury that the only way he was able to create tire marks during his exemplar testing was through the same type of pedal error. However, Mr. Stopschinski admitted during the post-trial hearing that he was aware all along that tire marks could also be made by a cruise control malfunction, as posited by the plaintiffs. Ford knew Mr. Kent’s testimony was untrue and it was therefore fraudulent and misleading for Ford to have represented to the jury that a pedal error by Mr. Stimpson was the only way the tire marks could have been created.
The evidence of record does not support this ruling.
The focus of Ford’s expert accident reconstruction testimony was that tire marks cannot be created if the driver is braking. Both Kent and Stopschinski based then-accident reconstruction theories on the evidence relating to the instant accident, including Mr. Stimpson’s claim that he was putting pressure on the brake the entire time the SA incident was occurring. Both Kent and Stopschinski opined that, instead of pressing the brake, Mr. Stimpson was actually pressing the accelerator pedal and, therefore, the tire marks were created. On this record, the trial court abused its discretion in granting a new trial based on Ford’s accident reconstruction evidence, because Kent’s and Stopschinski’s trial testimony addressed not the general issue of how tire marks can be created, but the specific issue of how tire marks were created during the Stimpsons’ accident.
Alternatively, the trial court granted the Stimpsons a new trial based on its conclusion that the jury’s verdict was against the manifest weight of the evidence. A trial court’s decision to grant a new trial on the ground that the verdict is contrary to the manifest weight of the evidence is reviewed for an abuse of discretion. Corbett v. Wilson, 48 So.3d 131, 138 (Fla. 5th DCA 2010).
The trial court held:
The verdict finding no causal defect in the Aerostar’s cruise control system and no causal negligence on the part of Ford was against the manifest weight of the evidence.
The proofs introduced at trial include various patents owned by Ford showing that electronic malfunctions in the cruise control system can cause sudden, unintended acceleration, in addition to reports from Ford’s engineers, including SIRs and CQIS reports, diagnosing sudden acceleration as a problem with the cruise control system. Ford’s Ishikawa engineering diagram likewise shows that EMI is a cause of sudden unintended acceleration.
Ford offered no evidence to contradict those admissions. The only evidence it offered was the testimony of its two reconstruction experts, who opined that the Stimpson accident could have been caused only by pedal error. However, as noted above, that testimony was misleading in that Ford was well aware at the time it elicited that testimony that a cruise control malfunction could also cause the tire marks.
The Stimpsons proved, by substantial factual and legal support, that Ford concealed the defect of sudden unexpected *411 full throttle acceleration caused by electronic interference in the 1991 Aerostar van. This threshold finding underpins the unique foundation of this case and the conclusions of law.
Accordingly, the only reasonable inference from the evidence is that Ford’s electronic cruise control system was negligently designed in that Ford knew or should have known that the system was susceptible to sudden unintended throttle opening, and likewise that there was a design defect in the 1991 Aerostar that was a cause of the Stimpsons’ accident.
The trial court abused its discretion in so ruling.
Conflicting testimony was presented during the Stimpsons’ case-in-chief concerning whether there was a causal defect in the van’s cruise control system, as well as whether there was causal negligence by Ford. Also, there was conflicting evidence concerning Mr. Stimpson’s pedal misapplication. As such, the trial court erred in concluding that the only reasonable inference from the evidence was that the cruise control system was negligently designed. Additionally, “[a] jury’s verdict is generally not against the manifest weight of evidence if the record shows conflicting testimony from two or more witnesses.” Lindon v. Dalton Hotel Corp., 113 So.3d 985 (Fla. 5th DCA March 8, 2013).
REVERSED and REMANDED.
ORFINGER, C.J., and SAWAYA, J., concur.

. See § 95.03l(2)(b), Fla. Stat. (2003).

. See § 95.03l(2)(d), Fla. Stat. (2003).

. Rule 1.540(b) of the Florida Rules of Civil Procedure sets forth several grounds upon which a court may relieve a party from a final judgment, and one such ground is fraud:
Rule 1.540. Relief From Judgment, Decrees, or Orders
(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or a party’s legal representative from a final judgment, decree, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

. We have jurisdiction to review this order pursuant to rule 9.130(a)(5) of the Florida Rules of Appellate Procedure because, although the order is non-final because it contemplates that a trial will be held on the issue of damages, the rule permits review of a non-final order entered on a rule 1.540 motion.